UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 2:24-mj-00385-KFW-1 |
| ) | |
| JULIO BENITO MORAN IBARRA, ) | |
| ) | |
| **Defendant** ) | |

**ORDER ON MOTION FOR PRETRIAL DETENTION**

In this criminal matter, the Defendant is charged by complaint with one count of unlawful reentry of a removed alien in violation of 8 U.S.C. § 1326(a), (b)(2). *See* Complaint (ECF No. 1). The Government argues that this case is eligible for pretrial detention under the Bail Reform Act because the Defendant poses a serious risk of flight under 18 U.S.C. § 3142(f)(2)(A). The Defendant contends that the Government has not proven that he poses a serious risk of flight, particularly where it relies on the possibility of his involuntary removal by Immigration and Customs Enforcement (ICE). After a detention hearing on December 13, 2024, and subsequent supplemental briefing and argument, I issued an order from the bench on January 3, 2025, finding that although the Defendant is eligible for pretrial detention based on his serious risk of flight, the Government failed to prove that there are no conditions of release that would reasonably assure his appearance. *See* 18 U.S.C. § 3142(g). I am issuing this written order to further memorialize my findings and analysis.

### I. Background

The Defendant, a citizen of Ecuador, was apprehended by the United States Border Patrol in Texas in August 2023. *See* Affidavit of Derek Wilcox (ECF No. 1-1)

1

¶¶ 5, 7. ICE then determined that the Defendant was inadmissible to the United States and issued a final order for his removal, which occurred in September 2023. *See id.* ¶ 7; Gov't Exhibit 5. Nevertheless, the Defendant later admitted to reentering this country without authorization in November 2023. *See* Wilcox Affidavit ¶ 6. After his arrest in this matter in early December 2024, ICE reinstated the prior removal order and issued an immigration detainer stating that it would assume custody of the Defendant if he is released. *See* Gov't Exhibit 6; Def.'s Exhibit 1 (ECF No. 23-1).

In his interview with Pretrial Services, the Defendant indicated that he was residing in Biddeford, Maine with his father and two of his siblings prior to his arrest, and that his mother, partner, and toddler child still live in Ecuador. *See* Pretrial Services Report (ECF No. 14) at 2. The Defendant is seasonally employed as a local carpenter and roofer but most recently worked at a grocery store warehouse in Westbrook, Maine making $600 per week, and he sends approximately $1,000 per month back home to his family in Ecuador. *See id.*

The Defendant's initial appearance in this matter took place on December 9, 2025, at which time the Government moved for detention and I temporarily detained the Defendant. A detention hearing was held on December 13, 2024, during which the Government argued that the Defendant was eligible for pretrial detention based on his serious risk of flight. In response, the Defendant argued that the Government was not entitled to a detention hearing because it had not proven, by a preponderance of the evidence, that the Defendant is a serious flight risk, and that the ICE detainer and the prospect of the Defendant's

removal are non-volitional and therefore could not serve as a basis for his detention. I continued the matter once again and ordered the parties to brief whether the Government had proven eligibility under section 3142(f)(2)(A) and whether the Defendant's ICE detainer status could be considered in the section 3142(g) analysis. The Defendant remained detained pursuant to my order of temporary detention.

On December 20, 2024, I held a final hearing on this matter at which the parties offered oral argument central to those two issues. I took the matter under consideration until January 3, 2025, when I denied the Government's motion from the bench and explained that after considering the robust argument by counsel at hearing and on brief, I found that the Government had proven, by a preponderance of the evidence, that the Defendant is a serious flight risk under section 3142(f)(2)(A) but that, after weighing the section 3142(g) factors, detention is not warranted because there are conditions of release that can reasonably assure his appearance.

## II. Legal Standard

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act provides one such exception by way of a two-step process through which the government may seek pretrial detention. *See* 18 U.S.C. § 3142(f)-(g).

First, the Government must prove that the case is eligible for pretrial detention because it concerns one of five categories of serious crimes, a serious risk that the defendant will flee, or a serious risk that the defendant will obstruct justice. *See id.* § 3142(f). Here, the Government bases its motion on the Defendant's serious risk of

flight, *see id.* § 3142(f)(2)(A), which it must prove by a preponderance of the evidence, *see United States v. Reynolds*, 609 F. Supp. 2d 108, 110 (D. Me. 2009).

Second, if the Government establishes eligibility, it must then prove that there is "no condition or combination of conditions" that "will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e). The Government must prove that no conditions can assure the defendant's appearance by a preponderance of the evidence, while its burden with respect to no conditions assuring safety is clear and convincing evidence. *See United States v. Lopez*, No. 23-CR-10269-AK, 2023 WL 8039318, at *2 (D. Mass. Nov. 20, 2023). In this case, the Government argues only the former.

Although Congress did not articulate factors that the court must consider in step one to determine whether a serious risk of flight exists, it did expressly designate four factors that the court is required to examine in every step two detention analysis: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the [defendant]," (3) "the history and characteristics of the [defendant]," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g).

### III. Consideration of the ICE Detainer

I must first address whether and to what extent I may consider the ICE detainer under the Bail Reform Act as part of my pretrial detention analysis.

Setting aside minor differences, the parties largely agree that an ICE detainer or removal order cannot, by itself, justify pretrial detention. This is because holding

4

that a defendant can be detained pretrial based solely on the chance that ICE will involuntarily detain and deport them if they are released would create a categorical presumption of detention for such defendants, which contravenes the Bail Reform Act's requirement that pretrial detention decisions must involve individualized assessments. *See United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015) ("[T]he government may not use its discretionary power of removal to trump a defendant's right to an individualized determination under the Bail Reform Act."); *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017) ("The Bail Reform Act directs courts to consider a number of factors and make pre-trial detention decisions as to removable aliens on a case-by-case basis." (cleaned up)).

Moreover, the fact that ICE may involuntarily remove a defendant does not establish their eligibility for pretrial detention as a serious flight risk under section 3142(f)(2)(A). *See Ailon-Ailon*, 875 F.3d at 1337 (concluding that pretrial detention eligibility may not be based on the risk of a defendant's involuntary removal).

Nevertheless, considering a defendant's immigration status—including the prospect of ICE detention and removal—and how that status may affect their risk of flight and nonappearance is consistent with the individualized assessment required by the Bail Reform Act. *See* Gov't Memorandum at 11. It would defy common sense to proceed as though the prospect of removal has no effect on an alien defendant's motivations. *See Lopez*, 2023 WL 8039318, at *4 n.3 ("The court may, of course, consider a defendant's immigration status in determining whether the defendant may flee. For defendants who face a virtual certainty of deportation following a

substantial prison sentence, there is an obvious motivation to flee to their countries of origin rather than wait to serve a sentence in the United States and then be deported. Such facts speak to the likelihood that a defendant will flee intentionally and to the conditions that might mitigate such a risk.").

### IV.  Step One: Detention Eligibility

To establish that a defendant poses a "serious risk of flight" and is therefore eligible for pretrial detention, *see* 18 U.S.C. § 3142(f)(2)(A), the Government must prove there is a risk of flight beyond what might typically exist in a federal felony case. *See, e.g.*, *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023) (defining "risk of serious flight" under section 3142(f)(2)(A) as "a great risk—beyond average—that the defendant will intentionally or actively move within or outside the jurisdiction to avoid court proceedings or supervision").

I conclude that the Government has proven by a preponderance of the evidence that the Defendant is eligible for detention under 18 U.S.C. § 3142(f)(2)(A) because he poses a serious risk of flight. The Defendant's risk of flight is greater than average for several reasons.

First, the Defendant has no legal status in the United States and has resided in Biddeford for only around six months.[1] *Cf. Figueroa-Alvarez*, 681 F. Supp. 3d at 1142-43 (explaining that the longer an alien defendant resides in the United States, the less likely he is to flee). Second, although he purportedly lives with his father and two siblings in Biddeford, the Defendant's ties to Ecuador remain strong

---

[1] It is unclear how long the Defendant was in the United States prior to his September 2023 removal.

because his mother, partner, and toddler child still reside there. *See id.* at 1143 ("[W]here the balance of an alien defendant's immediate family resides in their home country . . . flight is more likely."). Third, the Defendant's primary reason for being in the United States was to earn money to send to his family in Ecuador, which, until recently, he accomplished without proper work authorization, and ICE's involvement now frustrates that purpose by chilling any illegitimate sources of income. *See id.* at 1143-44. Fourth, the Defendant has demonstrated an ability to travel back and forth between the United States and Ecuador in the past couple of years. *See id.* at 1142 ("Frequent and recent foreign travel provides concrete evidence of [a defendant's] ability to flee."). And finally, the evidence against the Defendant is strong—he signed a statement admitting he reentered the United States after removal and without authorization. *See United States v. Neves*, 11 F. App'x 6, 8 (1st Cir. 2001) (concluding that an alien defendant charged with unlawful reentry had "a strong incentive to flee . . . to avoid the near-certainty of a prison sentence followed by deportation").

## V. Step Two: Conditions of Release

I now turn to section 3142(g) to evaluate whether any conditions of release can reasonably assure the Defendant's appearance in these proceedings as required.

The Government argues that no conditions of release can reasonably assure the Defendant's appearance given his minimal ties to this jurisdiction and the United States, his strong incentive to flee, and his demonstrated ability to move furtively within the United States and across national borders. *See* Gov't Memorandum at 14.

The Government also reasons that an employment condition could not be imposed because the Defendant is unauthorized to work, an unsecured bond would be ineffective considering he has no assets, he could simply cut off a location monitoring device, and any conditions that rely on his good faith are nonstarters given the disrespect for court orders he demonstrated by his illegal reentry.[2] *See id.* at 14-15.

In response, the Defendant emphasizes his local family support and stable housing, and counters that the conditions proposed by United States Probation can reasonably assure his appearance as required. S*ee* Opposition at 6-8.

For several reasons, I conclude that the Government has not met its burden of proving, by a preponderance of the evidence, that no conditions can mitigate the Defendant's serious risk of flight enough to reasonably assure his appearance.

The first factor, the nature and circumstances of the offense, favors release. *See* 18 U.S.C. § 3142(g)(1). Although the Government contends that the illegal reentry charge demonstrates the Defendant's lack of respect for court orders and federal law, as evidenced by his near immediate return to the United States after removal, I agree with the Defendant that it actually speaks more strongly of his desire to remain in this country. *See* Gov't Memorandum at 13; Opposition at 6;

---

[2] The First Circuit has recognized electronic monitoring as an effective means of both deterring flight and enabling its early detection. *See United States v. O'Brien*, 895 F.2d 810, 815-16 (1st Cir. 1990); *Neves*, 11 F. App'x at 9. Although the Defendant's lack of income in part motivates him to flee, it also hinders his ability to flee quickly or far enough that early electronic detection would lose its effectiveness. *Cf.* Neves, 11 F. App'x at 9 (concluding that electronic monitoring may be insufficient to overcome an alien defendant's strong incentive to flee where the defendant had proven access to financial resources). I am similarly unpersuaded that the Defendant's illegal reentry makes him too untrustworthy for any "good faith" conditions to be effective. *See generally Figueroa-Alvarez*, 681 F. Supp. 3d at 1139-40 (debunking the misconception that defendants who voluntarily chose to illegally enter or reenter this country and stay are "more likely than non-alien defendants to leave this country or the jurisdiction to avoid prosecution—just because they came here from another country").

8

*see also Figueroa-Alvarez*, 681 F. Supp. 3d at 1144 (observing that "the very act of illegally reentering the United States—knowing that reentry subjects the alien defendant to a potential prison term and certain deportation thereafter—demonstrates a firm resolve to reside in this country").

The second factor—the weight of the evidence—weighs neutrally. *See* 18 U.S.C. § 3142(g)(2). The evidence in this case is quite strong: the Government indicates that the Defendant was arrested in the United States in December 2024 and that he signed a sworn affidavit admitting to having reentered the country without authorization in November 2023 despite his September 2023 removal. *See* Gov't Memorandum at 13; Affidavit of Derek Wilcox ¶¶ 6-7. Importantly, however, the Defendant's sentencing guideline range is only zero to six months given his lack of criminal history, which reduces the likelihood that he would be overcome by his motivation to flee. *Cf. Lopez*, 2023 WL 8039318, at *4 n.3 (explaining that defendants who face "a virtual certainty of deportation following a *substantial* prison sentence" have an "obvious motivation to flee" (emphasis added)).

The third factor—the Defendant's history and characteristics—supports release. *See* 18 U.S.C. § 3142(g)(3). While the Defendant's ties to this jurisdiction and the United States are not especially strong, he does enjoy stable housing and family support in Biddeford, which offsets the impact of his current inability to legally generate income. Moreover, he has no history of nonappearance, and the length of his pretrial release will likely be short given the strength of the Government's evidence and the relatively straightforward nature of the pending charge.

The final factor—"the nature and seriousness of the danger to any person or the community"—does not militate against release because no evidence was proffered, and the Government does not argue, that the Defendant poses a danger to any person or the community. *See id*. § 3142(g)(4).

## VI. Conclusion

Because I conclude that there are conditions of release that will reasonably assure his appearance, I **ORDER** the Defendant released in accordance with my contemporaneous order setting conditions of release (ECF No. 28).

### *NOTICE*

*In accordance with Federal Rule of Criminal Procedure 59(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated: January 3, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge